## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| USI INSURANCE SERVICES LLC,   ) | |
|                            ) | |
|     **Plaintiff,**              ) | |
|                            ) | |
| **v.**                            ) | **Civil Action File No.** |
|                            ) | |
| **ELISIA HAHNENBERG AND**   ) | |
| **SOUTHEAST SERIES OF**     ) | |
| **LOCKTON COMPANIES, LLC,**  ) | |
|                            ) | |
|     **Defendants.**          ) | |

## COMPLAINT

Plaintiff USI Insurance Services LLC ("USI") hereby files this Complaint against its former employee Elisia Hahnenberg ("Ms. Hahnenberg") and Southeast Series of Lockton Companies, LLC ("Lockton") and respectfully states as follows:

## NATURE OF THIS ACTION

1.      USI brings this action against Ms. Hahnenberg to enforce the Confidentiality, Non-Solicitation and Non-Interference Agreement (the "LH Agreement") (attached here as **Exhibit A**) entered into between USI and Ms. Hahnenberg, USI's former employee, which she has violated and continues to violate in the course of her employment with Lockton, her current employer and a direct competitor of USI.

2.      USI also brings this action against Lockton for tortiously interfering

with USI's contractual and business relationships with its former employee, for encouraging its former employee to breach her continuing legal obligations to USI, and for raiding USI's client team supporting a multi-million-dollar book of business.

3.      USI seeks monetary damages to compensate USI for the damages Defendants have caused USI to incur to date and seeks an injunction to stop Ms. Hahnenberg's ongoing violations of her agreement with USI and Lockton's ongoing tortious conduct. USI reserves the right to amend this Complaint to assert additional claims as they may be discovered.

## PARTIES

4.      Plaintiff USI Insurance Services LLC is a Delaware limited liability company registered to do business in Georgia with its principal place of business located at 100 Summit Lake Drive, Suite 400, Valhalla, New York 10595. USI's sole member, USI, Inc., is a Delaware corporation. Therefore, USI is a citizen of Delaware and New York for jurisdictional purposes.

5.      Upon information and belief, Defendant Elisia Hahnenberg is a citizen of Georgia.

6.      Defendant Southeast Series of Lockton Companies, LLC is a Missouri limited liability company. Upon information and belief, Lockton's sole member is Lockton Management, LLC. Upon information and belief, Lockton

Management, LLC's sole member is Lockton Insurance Agency, Inc. Lockton Insurance Agency, Inc. is a Missouri corporation and has its principal place of business in Missouri. Therefore, Lockton is a citizen of the state of Missouri for jurisdictional purposes. Upon information and belief, no member of any of the foregoing Lockton entities is a citizen of the State of New York or Delaware.

7.     Lockton is registered to conduct business in Georgia and has offices in the State of Georgia, including in this judicial district. Lockton's registered agent in Georgia is Corporate Creations Network, located at 2985 Gordy Parkway, First Floor, Marietta, Georgia 30066.

## JURISDICTION AND VENUE

8.     Jurisdiction and venue are proper in this Court under the facts and circumstances set forth herein.

9.     This Court has personal jurisdiction over Lockton because it is registered to do business in the State of Georgia, has registered offices and agents in Georgia, and transacts business in Georgia.

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and there is complete diversity of citizenship.

11.     Upon information and belief there is complete diversity between the parties. USI has conducted reasonable inquiry to determine the citizenship of

Lockton and Ms. Hahnenberg and found no information indicating that either Ms. Hahnenberg or Lockton are citizens of Delaware or New York.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because this is the judicial district in which a substantial part of Defendants' challenged conduct took place giving rise to the claims asserted.

## FACTUAL ALLEGATIONS

### USI Insurance Services

13.    USI is one of the largest insurance brokerages in the United States and provides a full range of insurance, risk management, and other related services to thousands of clients nationwide.

14.    Insurance brokerage companies, like USI, invest significantly in establishing and maintaining strong relationships with their clients.

15.    USI regularly conducts repeat business with its clients.

16.    USI maintains offices in Georgia, including in Atlanta, Georgia located at 1 Concourse Parkway, Suite 700, Atlanta, Georgia 30328.

17.    To provide its services, USI employs sales executives, commonly referred to in the insurance industry as "Producers," and Account Executives, who are responsible for managing USI's customer relationships, including maintaining relationships with existing customers, attracting and developing new customers, expanding current customer relationships, and planning, marketing, and developing

future customer opportunities.

18.     Insurance brokerage companies, like USI, also invest significantly into the employees they hire and retain.

19.     The insurance brokerage field that USI occupies is an extremely competitive industry. An important part of USI's business is the relationships and goodwill that it forms with its clients. These relationships and goodwill are developed by hiring and training skilled personnel (including Producers and Account Executives), and through USI employees identifying and satisfying client needs and otherwise developing a solid reputation in the business community.

20.     This case involves USI's employees who serviced USI Client Accounts in connection with their employee benefits insurance needs.  Providing employee benefits services requires an insurance brokerage firm, such as USI, to provide highly technical employee benefits expertise and services. Servicing employee benefits clients requires frequent and regular contact with clients.

21.     USI relies on its employees, including Account Executives, to maintain and enhance the goodwill of USI with respect to USI's clients and relationships with prospective clients. In the course of performing their duties for USI, Account Executives have access to and gain knowledge of confidential information about USI and its client accounts. USI also provides its Account Executives with significant training and resources as well as access to USI's clients.

22.     Consistent with this industry practice, in recognition of the importance of the relationship between employee and client, as a condition of their employment with USI, USI generally requires all its employees who develop and service insurance business to agree to certain duties owed to USI and to restrictive covenants, such as non-competition, non-solicitation, employee non-interference, non-disclosure of confidential information, and/or other covenants, that apply during the term of employment and for certain limited periods after the termination of employment.

23.     To service the needs of its employee benefits clients, USI also develops and utilizes proprietary analytics, including a solutions product called Omni. Omni is a real-time, interactive solution that allows USI to provide customized solutions for its clients.

## The Target of Lockton's Raid

24.     Relevant to this case is a specific employee team that provides services to a large book of employee benefits clients of USI (hereinafter referred to as the "MS Team"). The clients pay USI fees in exchange for the employee benefits consulting services that USI provides. USI receives fees totaling multi-millions of dollars annually for the services it provides to the clients serviced by the MS Team.

25.     A key component of being able to service the needs of and retain those clients is the client service team that provides the day-to-day support for those USI

Clients. The Account Executives working with the MS Team support a Producer in its Atlanta office who services many of USI's large employee benefits clients.

26.     Prior to Ms. Hahnenberg's resignation from USI, nine Account Executives worked with the MS Team. Many of those nine Account Executives were 100% dedicated to working with the clients serviced by the MS Team.

27.     Lockton willfully engaged in wrongful and malicious conduct designed to induce former USI employees to leave their employment with USI and join Lockton. As described below, Lockton and Ms. Hahnenberg, have acted in concert to unlawfully and wrongfully poach the support personnel from the MS Team in order to cripple USI's ability to provide services to its clients and to ultimately convince the clients to switch their employee benefits broker to Lockton.

### Hahnenberg's Employment with USI and Post-Resignation Conduct

28.     On October 15, 2012, USI hired Ms. Hahnenberg. Ms. Hahnenberg was originally hired as an intern. USI made significant investments in her development, and she later was promoted to Employee Benefits Team Leader in USI's Atlanta, Georgia office.

29.     Ms. Hahnenberg executed a Confidentiality, Non-Solicitation & Non-Interference Agreement (the "LH Agreement") with USI on November 30, 2017.

30.     Ms. Hahnenberg was later promoted to Team Lead with other Account Executives reporting to her.

31.     Ms. Hahnenberg was also responsible for managing other Account Executives working with the MS Team, including Kyle Betz, Brianna Salazar, and Ashley Doiron.

32.     In her capacity as Team Lead, Account Executive, Ms. Hahnenberg was regularly in contact with USI's clients, including the clients serviced by the MS Team, and was integral to the MS Team's and USI's Atlanta office's employee benefits insurance program.

33.     As an Account Executive, Ms. Hahnenberg was responsible for developing, maintaining, and enhancing relationships with USI's clients and prospective clients and for assisting USI's clients in meeting their insurance needs.

34.     In her role as an Account Executive, Ms. Hahnenberg had access to and received a substantial volume of USI's confidential information and trade secrets, including access to USI's Omni platform and solutions generated for USI's clients from Omni.

35.     Ms. Hahnenberg has received access to a substantial volume of other information regarding USI's business operations and business strategy.

36.     This confidential information is valuable to the business of USI and could be used by competitors for their benefit and to USI's detriment.

37.     Ms. Hahnenberg had substantial relationships with prospective and/or existing clients of USI, customarily and regularly solicited for USI clients and

prospective clients, and customarily and regularly engaged in making sales or obtaining orders or contracts for products or services to be performed by others.

38.    During her employment at USI, Ms. Hahnenberg was an employee, who by reason of USI's investment of time, training, money, trust, exposure to the public, or exposure to clients and other business relationships during the course of her employment with USI, has gained a high level of reputation or public persona as USI's representative or spokesperson and has gained a high level of influence or credibility with USI's clients and other business relationships and was involved in the planning for the business of the MS Team.

39.    Ms. Hahnenberg is in possession of selective or specialized skills, learning, or abilities and customer contacts and customer information and she has obtained such skills, learning, abilities, contacts, and information by reason of having worked for USI.

40.    On May 30, 2024, Ms. Hahnenberg submitted her notice of resignation to USI.

41.    On June 1, 2024, Ms. Hahnenberg attempted to download confidential USI files to her mobile device.

42.     On June 7, 2024, USI sent Ms. Hahnenberg written notice reminding her of her post-employment obligations to USI.  (A true and correct copy of USI's June 18, 2024, letter is attached hereto as **Exhibit B**).

43.     Ms. Hahnenberg started working for Lockton in Atlanta, Georgia shortly after her resignation from USI, in June 2024.

44.     Prior to her departure from Lockton, Ms. Hahnenberg also called certain USI Client Accounts and informed them of her resignation and that she would be joining Lockton. USI instructed Ms. Hahnenberg not to contact USI clients, but she did so anyway.

45.     Ms. Hahnenberg did not return telephone calls from USI personnel during the period of time between when she gave notice of her resignation and when her employment with USI ceased. Ms. Hahnenberg's actions in informing clients and declining to participate in a smooth transition of the client service team caused damage to USI, including loss of goodwill with USI Client Accounts.

### Interference with Other USI Employees

### Kyle Betz

46.     After Ms. Hahnenberg resigned from USI, Mr. Kyle Betz was promoted to Team Lead Account Executive and continued working with the USI Client Accounts serviced by the MS Team.

47.     Mr. Betz received specialized training for his role.

48.     Mr. Betz later resigned from USI on December 12, 2024.

49.     The circumstances surrounding Mr. Betz's resigning his employment from USI and accepting employment with Lockton strongly suggested that Ms.

Hahnenberg had breached the Employee Non-Interference Covenant in the LH Agreement.

50.     On December 19, 2024, USI, through counsel, sent a letter to Ms. Hahnenberg again reminding Ms. Hahnenberg of her post-employment obligations to USI and demanding that she cease and desist any conduct in violation of the LH Agreement, including any further attempts to solicit or induce any covered employees to leave USI for Lockton.  (A true and correct copy of the December 19, 2024, correspondence is attached hereto at **Exhibit C**).

51.     The correspondence referenced in Paragraph 50 above, also demanded that Ms. Hahnenberg provide a copy the letter and its enclosures to Lockton. On information and belief, a copy of the letter contained in Exhibit C was provided to Lockton at or around the time that Ms. Hahnenberg received it.

52.     On information and belief, Lockton is aware of and has reviewed and/or had its counsel review the LH Agreement.

53.     In January 2025, Mr. Betz began his employment with Lockton as an Account Executive in Atlanta, Georgia.

### Brianna Salazar

54.     Ms. Brianna Salazar is employed as an Account Executive at USI.  She previously worked under the supervision of Ms. Hahnenberg and later Mr. Betz in supporting the Client Accounts serviced by the MS Team.

55.     On March 20, 2025, Ms. Salazar submitted her notice of resignation from USI and will be starting her employment with Lockton as an Account Executive in Atlanta, Georgia thereafter.

56.     During their tenure with USI, Ms. Hahnenberg, Mr. Betz, and Ms. Salazar serviced the majority of the large clients for the MS Team in Atlanta, Georgia.

57.     Together, they serviced USI Client Accounts whose generated revenues amount to approximately 50% of the entire client book managed by the MS Team.

### Ashley Doiron

58.     Ashley Doiron is an Account Executive employed by USI who works with the USI Client Accounts managed by the MS Team.

59.     Prior to being hired by USI, Ms. Doiron worked for a medical practice. USI hired Ms. Doiron to work with the MS team to provide employee benefits services to USI's Client Accounts.  USI invested significant time and resources in training Ms. Doiron to work in an insurance brokerage role servicing employee benefits clients.

60.     In January 2025, Ms. Doiron was contacted by a recruiter for Lockton. Given Ms. Doiron's short tenure in the insurance brokerage field, it is unlikely that Lockton would know of Ms. Doiron through her work in the industry.

61. At the time the recruiter reached out to Ms. Doiron, she did not know he was affiliated with Lockton. Ms. Doiron later learned through LinkedIn that the recruiter worked for Lockton and was connected to Ms. Hahnenberg. Circumstances suggest that the Lockton recruiter initiated his solicitation efforts with the assistance of Ms. Hahnenberg.

## **Ms. Hahnenberg's Covenants with USI**

62. Under Section 4.7 of the LH Agreement, Ms. Hahnenberg agreed that during her employment with USI and for a period of two (2) years following termination or resignation of her employment that she would not solicit or induce other employees of USI to leave USI and work for a competitor.

63. Specifically, Ms. Hahnenberg agreed to the following "Non-Interference with Employees" provision:

> [D]uring Employee's employment with the Company and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit the employment, consulting or other services of, or hire, any other employee of the Company; or (b) otherwise induce any such employee to leave the Company's employment or breach an employment agreement therewith; in each case with respect to any employee of the Company with whom Employee worked or obtained knowledge about as a result of Employee's employment with the Company.

*See* LH Agreement, ¶ 4.7.

64. Ms. Hahnenberg also agreed that the time and scope of the above-listed

"Non-Interference With Employees" provision was reasonable and necessary to protect USI's confidential information, goodwill, and other business interest.

65.    Ms. Hahnenberg also agreed that should she violate the "Non-Interference With Employees" provision, or any of the covenants in the LH Agreement, that USI would in addition to any other rights or remedies available at law, be entitled to equitable relief, including temporary injunction and permanent injunction. *See* LH Agreement ¶ 5.

## Lockton Raids Support Personnel for the MS Team at USI

66.    Lockton is a direct competitor of USI.

67.    Upon information and belief, Lockton has contacted a number of USI employees to recruit them to resign from USI and work for Lockton, this includes sending messages to USI employees on LinkedIn and, on information and belief, spreading false information about the state of USI and their ability to retain clients and employees.

68.    Prior to the interference by Lockton and Ms. Hahnenberg, nine Account Executives were dedicated to servicing the USI Client Accounts managed by the MS Team.  As of the current date three of the nine Account Executives have resigned to accept employment with USI's competitor Lockton. Lockton also has tried to interfere with the USI employment of a fourth Account Executive.

69.    USI is now in a vulnerable position with the potential for continued loss

of Atlanta Account Executives and continued business harm and goodwill due to Defendants' improper actions.

70.     The loss of USI Account Executives has caused disruption to the MS Team, as there has been a loss of highly trained and skilled individuals with institutional knowledge of USI clients. This has resulted in the need for USI to hire and train other individuals.

71.     The loss of USI Account Executives and the business disruption has also harmed the morale among the MS Team in Atlanta, Georgia, which will further impede USI's ability to retain its current workforce as well its ability to attract new employee talent.

72.     The disruption has also caused harm to USI's client goodwill.

73.     The full extent of the damage to USI, however, cannot be quantified as to the transfer of talented Account Executives and potentially Client Accounts to a competitor precipitated by ones having detailed knowledge of confidential, proprietary, and trade secret information belonging to USI.

74.     Defendants' actions have diminished (and will continue to diminish) USI's position in the marketplace and undermine its goodwill among its employees and clients.

75.     By raiding USI's employees, Lockton has engaged in an unlawful strategy to seize USI's experienced and qualified employee benefits personnel and

has encouraged Ms. Hahnenberg to breach her "Non-Interference With Employees" provision for Lockton's own commercial benefit and to the detriment of USI.

**COUNT ONE**

**Breach of Contract – Non-Interference With Employees**
**(USI Against Defendant Hahnenberg)**

76.     USI incorporates by reference and re-alleges the allegations contained in all preceding paragraphs as if fully set forth herein.

77.     The LH Agreement is a valid and enforceable contract between USI and Ms. Hahnenberg.

78.     USI performed all of its obligations to Ms. Hahnenberg under the LH Agreement.

79.     Ms. Hahnenberg agreed to refrain from directly or indirectly soliciting, recruiting, or inducing, any covered USI employee to leave employment with USI.

80.     The Non-Interference With Employees provision is reasonably necessary and narrowly tailored to protect USI's ascertainable rights and protectable interests.

81.     The agreement is reasonable in time, geographic area, and scope of activities prohibited.

82.     The agreement is limited to USI employees Hahnenberg worked with or obtained knowledge about as a result of her employment with USI.

83.     Further, the time limitation regarding the Non-Interference With Employees provision is only two years, a reasonable period of time.

- 16 -

84.     Upon information and belief, notwithstanding her contractual obligations to the contrary, Ms. Hahnenberg has materially breached the LH Agreement with USI by directly and/or indirectly soliciting, or participating in the solicitation of, USI Account Executives to leave USI and go to work for USI's competitor, Lockton.

85.     As a direct and proximate result of Ms. Hahnenberg's breach of the LH Agreement, USI has suffered and will continue to suffer actual damages, including the loss of valuable employee talent and potential business opportunities with existing clients and potential clients.

86.     Ms. Hahnenberg's breach of her Non-Interference With Employees provision will cause, and has caused, USI to suffer business costs related to the decline in the stability of its workforce, lost good will, and erosion of customer relationships.

87.     USI is entitled to recover compensatory damages, in an amount to be determined at trial, from Ms. Hahnenberg's breach of her Non-Interference With Employees obligations.

88.     The exact amount of such damages will be determined at trial, including costs and attorneys' fees to the extent allowed by law, including pursuant to O.C.G.A. § 13-6-11.

## COUNT TWO

**Tortious Interference With Contractual Relations – "Non-Interference With Employees"**
**(USI Against Lockton)**

89.     USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     USI has a valid and enforceable contractual relationship with Ms. Hahnenberg by virtue of her Agreement with USI, which contains an enforceable "Non-Interference With Employees" provision.

91.     Lockton is not a party to the LH Agreement at issue between USI and Ms. Hahnenberg.

92.     USI had a reasonable expectation that its contractual relationship with Ms. Hahnenberg would continue, and that Ms. Hahnenberg would comply with the provisions set forth in the LH Agreement.

93.     Upon information and belief, Lockton had knowledge of the LH Agreement between USI and Ms. Hahnenberg.

94.     On June 10, 2024, USI sent Ms. Hahnenberg a letter reminding her of her continuing obligations to USI, including but not limited to, her "Non-Interference With Employees" provision.

95.     On December 19, 2024, USI sent Ms. Hahnenberg a cease-and-desist letter regarding her breach of the "Non-Interference With Employees" provision and

instructed her to provide a copy of the cease-and-desist letter and its enclosures to Lockton.

96.    By the acts described above, Lockton has willfully and intentionally interfered with USI's contractual relationship with Ms. Hahnenberg by inducing or encouraging Ms. Hahnenberg to recruit any covered USI employees to join Lockton in violation of the LH Agreement.

97.    Upon information and belief, Lockton directed, authorized, encouraged or ratified improper and illegal solicitations of USI's employees.

98.    Lockton's conduct is improper and unfair.

99.    Lockton had improper motive and used improper means in interfering with USI's contractual relations without lawful justification or legitimate reason for the interference.

100.    Lockton has acted purposefully, with malice and with the intent to injure USI when it encouraged a former USI employee to solicit current USI employees. As a direct and proximate result of Lockton's actions described above, USI has suffered and continues to suffer irreparable harm and monetary damages.

## COUNT THREE

### Tortious Interference With Contractual and Business Relations – Workforce Raiding
### (USI Against Defendant Lockton)

101.    USI restates and incorporates herein by reference each and every

allegation contained in the preceding paragraphs as if fully set forth herein.

102.    Lockton has engaged in systematically stealing Account Executives servicing the MS Team, which handles a multi-million-dollar book of clients to whom USI provides employee benefits insurance services.

103.    USI's business interests have been damaged by Lockton's tortious behavior, namely the loss of three out of nine team members and the attempted hire of a fourth team member on USI's Atlanta Employee Benefits group and servicing the clients of the MS Team, including the Team Leader (Ms. Hahnenberg), and such tortious behavior has resulted in a severe loss of employee talent.

104.    The loss of employee talent impairs USI's ability to service its Client Accounts and makes those relationships more vulnerable to Lockton's unfair competition.

105.    Upon information and belief, in an attempt to further harm USI's Employee Benefits practice group and the MS Team and to draw USI clients to Lockton, Lockton recruiters and/or employees are telling USI clients and employees that USI is going down and no one wants to work at USI anymore.

106.    On information and belief, Lockton intentionally encouraged and induced Ms. Hahnenberg to breach the LH Agreement with USI, which Lockton did with the intent to harm USI's business, specifically the MS Team, in order to unfairly compete for USI's clients.

107.     Further, since Mr. Betz's resignation from USI, acting in concert with Lockton, he has made efforts to solicit USI's clients in violation of his agreement with USI, including by inviting USI clients to Lockton-hosted events.

108.     Lockton's conduct was not privileged or justified.

109.     Such interference by Lockton has caused harm to USI, including disruption to its business and damages to USI's goodwill.

110.     Accordingly, Lockton is liable to USI for the damages caused to USI by its tortious behavior, in an amount to be proven at trial.

## COUNT FOUR

### Civil Conspiracy
### (USI Against All Defendants)

111.     USI incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

112.     Defendants have acted in concert to undertake the tortious and other wrongs alleged herein.

113.     Ms. Hahnenberg and, on information and belief, Lockton were aware of Ms. Hahnenberg's "Non-Interference With Employees" obligation to USI under the Agreement.

114.     On information and belief, Ms. Hahnenberg and Lockton knowingly and willingly conspired and agreed between themselves to breach the "Non-Interference With Employees" provision.

115. Lockton employees and Ms. Hahnenberg were and remain members of a combination of two or more persons, the object of which is to injure USI in its business by raiding USI's Account Executives who were members of the Atlanta Employee Benefits practice group to the detriment of USI.

116. Defendants' unlawful acts committed in furtherance of this conspiracy include one or more of the following: unlawful direct and indirect solicitation of USI Account Executives to leave USI with the ultimate goal of taking USI's clients for the commercial benefit of Lockton and to the detriment of USI. This conspiracy has as its object the impairment of competition from USI's competing Employee Benefits practice group and corresponding benefit to Lockton through improper means, such as the wrongful interference with USI's Agreements with its employees, directed to harm USI in Georgia and elsewhere.

117. The objective Defendants sought to accomplish was to gain improper competitive advantage, injure USI's business, and strain USI's employee and client relationships.

118. As a result of the conspiracy, USI has suffered and will continue to suffer direct and proximate damages including but not limited to actual damages, lost profits, consequential damages, loss of value, goodwill, employee relationships, and client relationships in its business.

119. Under the conspiracy, all tortious conduct and other wrongs by any one

conspirator shall be chargeable to all Defendants.

120. As a direct and proximate result of Defendants' actions, USI has suffered damages in an amount to be determined at trial.

## COUNT FIVE

**Attorneys' Fees**
**(USI Against All Defendants)**

121. USI incorporates by reference and re-alleges the allegations contained in all preceding Paragraphs as if fully set forth herein.

122. Ms. Hahnenberg acted in bad faith in wrongfully and maliciously breaching the LH Agreement.

123. Lockton acted in bad faith in wrongfully and maliciously encouraging Ms. Hahnenberg to breach her LH Agreement.

124. Lockton acted in bad faith in in wrongfully and maliciously raiding USI's MS Team and in encouraging USI Account Executives to leave USI and join Lockton.

125. By virtue of the conduct described above, Defendants have acted in bad faith, been stubbornly litigious and have caused USI unnecessary trouble and expense.

126. Pursuant to O.C.G.A. § 13-6-11, USI is entitled to its costs and expenses, including reasonable attorneys' fees.

## COUNT SIX

### Punitive Damages
### (USI Against All Defendants)

127. USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128. The Defendants' foregoing conduct demonstrated malice, an entire want of care, and conscious indifferent towards the consequences of their actions, and such conduct was undertaken with the specific intent to harm USI.

129. Punitive damages should be awarded in an amount sufficient to deter, penalize, and punish Defendants in light of the circumstances of this case.

## COUNT SEVEN

### Request for Preliminary and Permanent Injunctive Relief
### (USI Against All Defendants)

130. USI restates and incorporates herein by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

131. As set forth above, Ms. Hahnenberg has breached her contractual obligation to USI.

132. Ms. Hahnenberg agreed in the LH agreement that, under the present circumstances, USI is entitled to injunctive relief in order to enforce the restrictive covenants in the LH Agreement. *See* Exhibit A, ¶ 5.

133. Defendants' conduct in actively soliciting USI's employees, directly

and indirectly through Lockton, demonstrates that, if not enjoined, Defendants are likely to continue to cause USI substantial and irreparable harm.

134.   Lockton's actions in tortiously interfering with USI's contractual and business relations have caused harm to USI and are likely to continue to cause USI substantial and irreparable harm if not enjoined.

135.   USI does not have an adequate remedy at law for the harm Defendants have already caused and are likely to continue to cause, including the loss of and damage to the goodwill of USI's employees, clients, and potential clients. The amount of such damages would be significant, but difficult to determine specifically.

136.   The public interest will not be harmed if an injunction is granted.

137.   Accordingly, USI is entitled to preliminary and permanent injunctive relief enjoining Defendants from continuing to breach the "Non-Interference With Employees" covenant and from tortiously interfering with USI's contractual and business relations.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, USI respectfully requests the following relief:

(a)   That the Court award compensatory damages resulting from Ms. Hahnenberg's breach of contract;

(b)   That the Court award compensatory and punitive damages arising from Lockton's tortious interference and Defendants' civil conspiracy;

(c) That the Court award USI all attorneys' fees and costs it has incurred and will incur in connection with this action;

(d) That the Court enter an injunction against Defendants requiring compliance with the LH Agreement, including (i) barring Ms. Hahnenberg from soliciting USI employees that she worked with or obtained knowledge about while employed with USI, to leave USI, and (ii) barring Lockton from continuing its unlawful raiding of USI's Atlanta employee benefits workforce; and

(e) That the Court award such other and further relief as it deems just and proper.

## JURY DEMAND

USI demands a jury trial on the claims asserted in this Complaint.

Respectfully submitted this 11th day of April, 2025.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Nancy H. Baughan*
Nancy H. Baughan
Georgia Bar No. 042575
Timia A. Skelton
Georgia Bar No. 667099
Promenade Tower, Suite 2100
1230 Peachtree Street NE
Atlanta, Georgia 30309
nbaughan@bradley.com
tskelton@bradley.com
Telephone: 404-868-2100
Facsimile: 404-868-2010

*Counsel for Plaintiff USI Insurance Services LLC*