# EXHIBIT A

# CONFIDENTIALITY, NON-SOLICITATION & NON-INTERFERENCE AGREEMENT

This CONFIDENTIALITY, NON-SOLICITATION & NON-INTERFERENCE AGREEMENT ("**Agreement**"), effective as of the **Effective Date** (as defined below), is by and between Wells Fargo Insurance Services USA, Inc., a North Carolina corporation (the "**Company**") and Elisia Hahnenberg ("**Employee**"). The Company and Employee are referred to hereinafter each individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

WHEREAS, pursuant to that certain Stock Purchase Agreement (the "**Purchase Agreement**") by and between USI Insurance Services LLC, a Delaware limited liability company ("**USI LLC**") and Wells Fargo & Company, a Delaware corporation ("**Seller**"), USI LLC will purchase from Seller all of the issued and outstanding shares of capital stock of ACO Brokerage Holdings Corporation, a Delaware corporation ("**ACO**"); and

WHEREAS, ACO owns, directly or indirectly, all of the issued and outstanding equity interests of the Company; and

WHEREAS, contingent upon the closing of the transactions contemplated by the Purchase Agreement (the "**Closing**"), and provided this Agreement is accepted in full by Employee, the Company desires to employ Employee on the terms and conditions herein and Employee is willing to accept employment on such terms and conditions; and

WHEREAS, Employee's covenants herein are a material inducement for the Company to enter into an at-will employment relationship with Employee pursuant to this Agreement; and

WHEREAS, Employee hereby acknowledges and agrees that the Retention Payment (as defined below) is a separate and additional payment to which Employee is not otherwise entitled and constitutes material and sufficient consideration to induce Employee to enter into this Agreement; and

WHEREAS, Employee acknowledges and agrees that by virtue of employment with the Company, Employee will receive a direct financial benefit and other good and valuable consideration; and

WHEREAS, by virtue of past employment with the Company or any Predecessor and future employment with the Company, Employee:

(a) had, has, and will continue to have, as applicable, access to, and has gained and will continue to gain knowledge of, Confidential Information of the Company, any Predecessor and/or any USI Company, the unauthorized use and/or disclosure of which could cause material and irreparable harm to the Company or any USI Company; and

(b) had, has, and will have, as applicable, significant responsibility for maintaining and enhancing the Goodwill of the Company with respect to the Company's Client Accounts and relationships with prospective clients and will have training and access to certain of the Company's customers and suppliers and, as such, has developed, will develop, and/or will continue to develop close and direct relationships with such customers and suppliers; and

(c) has developed, will continue to develop and/or will develop, as applicable close and direct relationships with the officers, directors, partners, employees, agents, suppliers, licensees, and/or other business relations of the Company or any USI Company; and

(d) has benefitted, will benefit, and/or will continue to benefit, as applicable, from the Company's investment of time, money and trust in Employee and will gain a high level of inside knowledge, influence, credibility, notoriety, fame, reputation or public persona as a representative or spokesperson of the Company, and, as a result, had, has, and will continue to have, the ability to harm or threaten the Company's legitimate business interests; and

(e) has made use of, and will continue to make use, of Employee's significant skills, training and experience; and

(f) for these and other reasons, will render services to the Company that Employee acknowledges are special, unique or extraordinary; and

WHEREAS, Employee acknowledges and agrees that the Company (on behalf of itself and the USI Companies) has a reasonable, necessary and legitimate business interest in protecting its own and the USI Companies' assets, Confidential Information, Client Accounts, relationships with Active Prospective Clients, Goodwill, employee relationships, and ongoing business, and that the terms and conditions set forth below are reasonable and necessary in order to protect these legitimate business interests; and

NOW THEREFORE, in consideration of the Employee's employment with the Company, and the recitals, representations, warranties, covenants, and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are conclusively acknowledged, the Parties, intending to become legally bound, agree as follows:

**AGREEMENT**

1. **DEFINITIONS.** Capitalized terms not defined elsewhere herein shall have the following meanings ascribed to them, which the Company may modify from time to time:

(a) **"Active Prospective Client"** means any Person or group of Persons who the Company specifically solicited or had documented plans to solicit within the six (6) months preceding the termination of Employee's employment with the Company.

(b) **"Client Account"** means the account of any client (including, without limitation, any retail insurance agent or broker, individual insured, association and any member thereof, and any insurance carrier or other entity to the extent third party administration claims processing or underwriting is performed by the Company for such carrier or other entity) which is or was serviced by the Company in connection with the Company's business, regardless of whether such services are provided by, or through the licenses of the Company or any shareholder, employee or agent of the Company.

(c) **"Competitive Business"** means any Person engaged in the production, distribution, marketing or sale of a Competitive Product. Where a Competitive Business is part of a larger business involving both competitive and non-competitive products, the terms of this Agreement shall only apply to that part of the business which involves the production, distribution, marketing or sale of a Competitive Product.

(d) **"Competitive Product"** means any product or service, in existence, that competes, or is reasonably anticipated to compete, in the same markets with a product or service of the Company, in existence, which Employee or the Company has sold, marketed, distributed or developed in the last two (2) years of Employee's employment with the Company, or about which Employee has acquired Confidential Information.

(e) **"Confidential Information"** means at any date, any information of the Company, any Predecessor and/or a USI Company to which Employee has access, that is not generally available to the public (unless such information has entered the public domain and become available to the public through fault of the Party to be charged hereunder), including but not limited to: (i) the identity, authority and responsibilities of key contacts and decision-makers employed by Client Accounts or Active Prospective Clients of the Company or any Predecessor; (ii) the types, terms and conditions of coverage and particularized insurance needs, requirements, risk specifications, preferences, expiration dates, claims and loss histories, and commission rates, fees and premiums of the Client Accounts or Active Prospective Clients of the Company or any Predecessor; (iii) the terms and conditions of benefits and compensation plans of Client Accounts or Active Prospective Clients of the Company or any Predecessor; (iv) the information furnished to the Company or any Predecessor in confidence by any Client Account or Active Prospective Client; (v) the business plans, marketing strategies, and pricing structure, criteria and formulae for insurance and benefits products and claims management, and unpublished financial data and statements of the Company, its corporate affiliates or any Predecessor; (vi)

the lists of the Client Accounts or Active Prospective Clients of the Company or any Predecessor, and any analyses and compilations thereof; (vii) the information that is password-protected; (viii) all internal memoranda and other office records, including electronic and data processing files and records; (ix) any and all other proprietary information of the Company, any Predecessor or a USI Company, including any information contained within a proprietary database; and (x) any and all other information that constitutes a trade secret under applicable law.

(f) **"Effective Date"** means the Closing date.

(g) **"Goodwill"** means the competitive advantage, including the expectation of new and/or continued patronage from Client Accounts and Active Prospective Clients based on the Company's or any Predecessor's investment in repeated contacts, business transactions, Confidential Information, or other efforts to develop lasting relationships.

(h) **"Person"** means an individual, a partnership, a corporation, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, a limited liability company, or a governmental entity (or any department, agency, or political subdivision thereof).

(i) **"Predecessor"** means any Person, in its capacity as predecessor-in-interest to the assets of the Company.

(j) **"USI Business"** means the businesses provided by the Company or the USI Companies, including, without limitation, insurance agency and brokerage, and related insurance services.

(k) **"USI Companies"** or **"USI Company"** means USI Advantage Corp., a Delaware corporation (**"USI"**), its subsidiaries (including USI LLC and the Company), and any entity under the control (as defined in Rule 12b-2 of the regulations promulgated under the Securities Exchange Act of 1934, as amended, without regard to whether any party is a "registrant" under such Act) of USI, and any of their successors or assigns.

2. **RETENTION BONUS PAYMENT.** Employee shall be eligible for a special retention bonus payment (the **"Retention Payment"**).

    2.1 *Retention Payment.* The Company shall pay Employee $88,000.00 payable in the following two (2) installments: (i) $11,000.00 paid within forty-five (45) days following the first anniversary of the Effective Date and (ii) $77,000.00 paid within forty-five (45) days following the fourth anniversary of the Effective Date.

2.2 *Eligibility for Retention Payment.* Notwithstanding the foregoing, if Employee's employment with the Company terminates or Employee is not actively employed, for any reason, on the dates any installment payments under Section 2.1 are due, Employee shall not earn or be paid such installment.

3. **COMPANY PROPERTY.** Employee acknowledges and agrees that all Confidential Information of the Company, including information transferred from any Predecessor under the Purchase Agreement, and/or of the USI Companies, which Employee has access to, receives or generates in the course of providing any USI Business, shall be the sole property of the Company and/or USI Companies, as the case may be, and shall remain with the Company and/or USI Companies upon termination of Employee's employment. Employee further acknowledges and agrees that Employee has no ownership rights to any Client Accounts and that the Client Accounts are owned by the Company and/or USI Companies.

4. **COVENANTS**

    4.1 *Confidential Information.* The Company agrees to provide Employee with Confidential Information to assist Employee in the course and scope of Employee's duties. Employee acknowledges that the Company's agreement to provide this Confidential Information to Employee is in consideration for, and ancillary to, Employee's agreement to the other terms in this Agreement.

    4.2 *Confidentiality During and Following Employment.* During Employee's employment with the Company and for five (5) years after Employee is no longer employed with the Company, for any reason, Employee will not use or disclose any Confidential Information of the Company, any Predecessor or any USI Company except: (a) in the normal course of business on behalf of any USI Company; (b) with the prior written consent of such USI Company; or (c) to the extent necessary to comply with the law or the valid order of a court of competent jurisdiction, in which event Employee shall notify such USI Company as promptly as practicable (and, if possible, prior to making such disclosure). Nothing in this Agreement shall prohibit Employee from disclosing data or information which has been independently developed and disclosed by others or which has otherwise entered the public domain through lawful means.

    4.3 *Defend Trade Secrets Act Required Notice.* Notwithstanding anything in this Agreement to the contrary, pursuant to the Defend Trade Secrets Act of 2016, Employee acknowledges and understands that:

    (a) An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that: (i) is made (A) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, and (B) solely for the purpose of reporting or

investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(b) An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual: (i) files any document containing the trade secret under seal; and (ii) does not disclose the trade secret, except pursuant to court order.

4.4 ***Assignment and Ownership of Intellectual Property.*** Employee acknowledges and agrees that any Intellectual Property (as defined herein) shall be "works made for hire" under the United States Copyright Act and that the Company shall be deemed the inventor, author and exclusive owner thereof together with all related intellectual property rights and exploitation rights for the longest period permitted by law. To the extent, if any, that any Intellectual Property is not deemed a "work made for hire" or that Employee is otherwise deemed to retain any rights, title or interest in or to any Intellectual Property, Employee hereby irrevocably transfers and assigns to the Company all rights, title and interest Employee may have or acquire to such Intellectual Property, without additional compensation, and hereby irrevocably waives any so-called moral rights of authors or other special rights which Employee may have or acquire therein. "**Intellectual Property**" means any advertisements, images, slogans, logos, designs, sketches, mock-ups, samples, concepts, ideas, inventions, original works of authorship, computer software programming of any nature, discoveries, techniques, copyrights, patents, trademarks or the like, conceived or made by Employee in whole or in part during Employee's employment with the Company: (a) using Employee's relationship with the Company; (b) using Confidential Information or the Company's time, resources, facilities, supplies, equipment or trade secrets; (c) relating to the Company's present or future business; or (d) resulting from Employee's work for the Company.

4.5 ***Non-Solicitation of Clients and Active Prospective Clients.*** In consideration of Employee's employment with the Company, and for other good and valuable consideration, Employee agrees that:

(a) During Employee's employment with the Company and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-

renewal of any Client Account; in each case with respect to any Client Account that Employee managed or regularly serviced and/or about which Employee obtained Confidential Information on behalf of the Company within the last two (2) years of Employee's employment with the Company.

(b) During Employee's employment with the Company and for six (6) months after Employee is no longer employed with the Company, for any reason, Employee shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Active Prospective Client; (ii) divert or attempt to divert services away from the Company with respect to any Active Prospective Client; (iii) consult for any Active Prospective Client with respect to services in competition with the Company; or (iv) sign a broker of record letter with any Active Prospective Client to provide services in competition with the Company; in each case with respect to any Active Prospective Client that Employee solicited and/or about which Employee obtained Confidential Information on behalf of the Company within the last six (6) months of Employee's employment with the Company.

4.6 ***Non-Competition With Respect to Client Accounts and Active Prospective Clients.*** In consideration of Employee's employment hereunder, and for other good and valuable consideration, Employee agrees that, during the Term and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee will refrain from carrying on any business in competition with the Company, directly or indirectly, with respect to any Client Account or Active Prospective Client in the Geographic Area. "**Carrying on any business in competition with the Company**" shall mean the sale of or providing any product or service that competes, or is reasonably anticipated to compete, in the same markets, with a product or service of the Company as to which Employee had a role in the sale, marketing, distribution, or development in the last two (2) years of Employee's employment with the Company, or about which Employee acquired Confidential Information. For purposes of this Section 4.6, the term "**Geographic Area**" shall include any territory within a one hundred (100) mile radius of any Company facility in which Employee maintained an office during the last twelve (12) months of Employee's employment hereunder, including any counties in the Geographic Area in which Employee conducted business or where Client Accounts or Active Prospective Clients with whom Employee had material contact in the two (2) years prior to termination of Employee's employment with the Company are present. It is expressly agreed that this Section 4.6 is not intended to restrict or prohibit the ownership by Employee of stock or other securities of a publicly-held corporation in which Employee (a) does not possess beneficial ownership of more than five percent (5%) of the voting capital stock of such corporation and (b) does not participate in any management or advisory capacity.

4.7 ***Non-Interference With Employees.*** In consideration of Employee's employment with the Company, and for other good and valuable consideration, Employee agrees, during Employee's employment with the Company and for two (2) years after Employee is no longer employed with the Company, for any reason, Employee shall not, directly or indirectly, on behalf of any Competitive Business in any capacity: (a) solicit the employment, consulting or other services of, or hire, any other employee of the Company; or (b) otherwise induce any such employee to leave the Company's employment or breach an employment agreement therewith; in each case with respect to any employee of the Company with whom Employee worked or obtained knowledge about as a result of Employee's employment with the Company.

4.8 ***Purpose of Restrictions.*** The purpose of the covenants in this Agreement is to protect the Company's assets and to prevent any Competitive Business from gaining an unfair advantage from Employee's knowledge of the Company's Confidential Information or misuse of the Company's Goodwill. Employee agrees that the time, geographic and scope limitations herein are reasonable and necessary to protect the Company's Confidential Information and Goodwill.

4.9 ***Modification.*** If a court finds any covenants in this Agreement exceed the permissible time, geographic or scope limitations, such covenants shall be reformed to the maximum permissible time, geographic or scope limitations. If a court refuses to enforce any of these covenants, in whole or in part, the unenforceable terms shall be eliminated ("blue penciled") or otherwise modified to the minimum extent necessary to permit the remaining terms to be enforced. The Company may unilaterally limit the scope of these covenants.

4.10 ***Independent Enforcement.*** Each of the covenants in this Agreement shall be construed as an agreement independent of (a) any other agreements or (b) any other provision in this Agreement, and the existence of any claim or cause of action by Employee against the Company, whether predicated on this Agreement or otherwise, regardless of who was at fault and regardless of any claims that either Employee or the Company may have against the other, shall not constitute a defense to the enforcement by the Company of any of the covenants in Section 4 of this Agreement. The Company shall not be barred from enforcing any of the covenants in Section 4 of this Agreement by reason of any breach of (i) any other part of this Agreement or (ii) any other agreement with Employee.

5. **REMEDIES.** Employee acknowledges: (a) the services to be rendered by Employee are of a special, unique, and extraordinary character; (b) it would be extremely difficult or impracticable to replace such services; (c) the material provisions of this Agreement are of crucial importance to the Company; and (d) any damage caused by Employee's breach of Section 4 of this Agreement would result in irreparable harm to the business of the Company for which money damages alone would not be adequate compensation.

Accordingly, Employee agrees, if Employee violates Section 4 of this Agreement, the Company shall, in addition to any other rights or remedies of the Company available at law, be entitled to equitable relief in any court of competent jurisdiction, including, without limitation, temporary injunction and permanent injunction. Employee agrees to waive any requirement for the Company to post a bond.

6. **EMPLOYEE'S REPRESENTATIONS AND WARRANTIES**

    6.1 ***Disclosure of Agreements; No Conflict.*** Employee represents and warrants that Employee has supplied to the Company all agreements between Employee and any Person, other than the Company, that employed or otherwise retained Employee within the past five (5) years. Employee further represents and warrants that Employee's execution of this Agreement and performance of Employee's duties for the Company do not conflict with, and are not impaired by, any law, rule, regulation, or court order by which Employee is bound.

    6.2 ***No Confidential Information.*** Employee represents and warrants that Employee has not taken any confidential information from any Person that employed or otherwise retained Employee, that Employee has no such confidential information in Employee's possession or control, and that Employee will not use any such confidential information in the performance of Employee's duties for the Company.

    6.3 ***No Copyright Materials.*** Employee represents and warrants that Employee has not taken any copyrighted materials from any Person that employed or otherwise retained Employee, that Employee has no such copyrighted materials in Employee's possession or control, and that Employee will not use any such copyrighted materials in the performance of Employee's duties for the Company.

    6.4 ***No Restrictive Purchase Agreements.*** Except with regard to any employment agreements with the Company, Employee represents and warrants that Employee is not and has not been subject to any agreement (e.g. asset purchase agreement, stock purchase agreement), within the past ten (10) years, whether heretofore expired or not, which prevents or restricts Employee from competing with any Person and/or soliciting any clients, customers, business or employees (including, without limitation, for the purposes of hiring such employees).

    6.5 ***Clients of Former Employers or Entities.*** Employee represents and warrants that, during any period of time in which such Employee was subject to any restrictions prohibiting Employee from competing with, or soliciting the clients, customers or business of such other organization, individual or business entity, Employee has not made any contact with any clients of any Person that employed or otherwise retained Employee, within the past five (5) years, concerning Employee's business relationship with the Company or concerning a prospective business relationship with such client in violation of such

restrictive covenant. Employee further represents and warrants that Employee will not, without prior express direction of the Regional Chief Executive Officer (the "**Regional CEO**"), solicit any clients of any Person that employed or otherwise retained Employee, within the past five (5) years in violation of such restrictive covenant.

6.6 *Employees of Former Employers or Entities.* Employee represents and warrants that Employee has not made and will not make, without prior express direction of the Regional CEO, any contact with any employees of any Person that employed or otherwise retained Employee, within the past five (5) years, concerning a prospective employment relationship with the Company.

6.7 *No Ownership Rights to Client Accounts.* Employee represents and warrants that Employee has no direct or indirect ownership rights to any Client Accounts of the Company and expressly acknowledges that the Client Accounts are owned by the Company and/or a USI Company.

7. **AT-WILL EMPLOYMENT.** Employee understands and agrees that Employee's employment with the Company is at-will and that nothing in this Agreement shall be construed or considered to affect the nature of such at-will employment.

8. **ADDITIONAL TERMS**

    8.1 *Amendment.* Except as set forth in Sections 4.9, 8.5, and other provisions herein as to which the Company expressly reserved the right to modify, no amendment or modification of this Agreement shall be valid or binding unless made in writing and signed by the Party against whom enforcement thereof is sought.

    8.2 *Assignment.* Employee may not assign any rights under this Agreement without the prior written consent of the Company. Employee's obligations under this Agreement inure to the Company, its successors and assigns. The Company may, at any time and without Employee's further approval or consent, assign or transfer this Agreement, by merger, asset sale or otherwise, to any subsidiary, affiliate, purchaser, acquirer or other assignee or successor. Any such successor or assign is expressly authorized to enforce the terms of this Agreement.

    8.3 *Entire Agreement.* This Agreement constitutes the entire agreement between the Parties with respect to the matters specifically referred to herein. Employee affirms that, in entering into this Agreement, Employee is not relying upon any oral or written promise or statement made by anyone at any time on behalf of the Company.

    8.4 *Governing Law.* This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to principles of conflicts of law.

8.5 **Severability.** The provisions of this Agreement are intended to be interpreted in a manner which makes them valid, legal, and enforceable. In the event any provision of this Agreement is found to be partially or wholly invalid, illegal or unenforceable, such provision shall be modified or restricted to the minimum extent and in the manner necessary to render it valid, legal, and enforceable. If such provision cannot under any circumstances be so modified or restricted, it shall be excised from this Agreement without affecting the validity, legality or enforceability of any of the remaining provisions.

8.6 **Waivers.** No waiver of any default or breach of this Agreement shall be deemed a continuing waiver or a waiver of any other breach or default. Failure to enforce any provision of this Agreement shall not be deemed a waiver of that provision or any other provision of this Agreement.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the Effective Date.

**WELLS FARGO INSURANCE SERVICES USA, INC.**　　**EMPLOYEE**

By: _____　　By: _____
Name: Ernest J. Newborn, II　　　　　　Elisia Hahnenberg
Title: Secretary